**A. ANDREW OBEIDY, ESQ. (FBN 910341)**
**OBEIDY & ASSOCIATES, P. A**
2755 E. Oakland Park Blvd, Suite 225
Fort Lauderdale, Florida 33306
Telephone:    (305) 892-5454
Andrew@obdlegal.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA, WEST PALM BEACH DIVISION

| | |
|---|---|
| TATIANA KOLOSOVA, an individual<br><br>Plaintiff,<br><br>vs.<br><br>OFFICE DEPOT, a, Delaware corporation MCKINSEY AND COMPANY USA, a Delaware Corporation, GERRY SMITH, an individual, LUKANA JUSTIN, an individual,<br><br>Defendants. | **CASE NO:**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  Whistleblower Retaliation in Violation of Sarbanes-Oxley Act – As against Office Depot<br>2.  Violation of the Florida Whistleblower Act – As against Office Depot<br>3.  Deceit – As against Office Depot<br>4.  Negligent Misrepresentation – As against Office Depot<br>5.  FEDUPTA – as against McKinsey<br>6.  Tortious Interference with at will Employment – as against Justin<br>7.  Tortious Interference with at will Employment – as against Smith<br>8.  IIED – As against Office Depot<br><br>**JURY TRIAL DEMANDED** |

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

## PRELIMINARY ALLEGATIONS

### (Parties)

1.     Plaintiff Tatiana Kolosova (hereinafter "Plaintiff") is, and at all times material hereto was, an individual residing in the Palm Beach County, state of Florida.

2.     Plaintiff alleges Defendant Office Depot, Inc. ("Defendant Office Depot", hereinafter) is, and at all times relevant hereto was, a Delaware Corporation, authorized to do business and doing business in Palm Beach County, Florida.

3.     Plaintiff alleges Defendant McKinsey and Company USA, Inc. ("Defendant McKinsey & Company", hereinafter) is, and at all times relevant hereto was, a Delaware Corporation, authorized to do business and doing business in Palm Beach County, Florida.

4.     Plaintiff alleges Gerry Smith, Chief Executive Officer at Defendant Office Depot, ("Defendant Smith", hereinafter) is, and at all times relevant hereto was, an individual residing in Palm Beach County, Florida.

5.     Plaintiff alleges Lukana Justin, Vice President of Marketing at Defendant Office Depot, ("Defendant Justin", hereinafter) is, and at all times relevant hereto was, an individual residing in Palm Beach County, Florida.

### (Venue)

6.     The contracts alleged herein were entered into in the county of Palm Beach, state of Florida, and the acts and transactions herein alleged took place in the county of Palm Beach, state of Florida.

### (Jurisdiction)

7.     This is an action involving a federal question arising under Corporate Responsibility Act of 2002, commonly known as the Sarbanes-Oxley Act of 2002.

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

**(General Allegations)**

8.   Plaintiff is a highly accomplished statistician and software engineer with approximately thirty years' experience in statistical modeling, forecasting, and computer software development.

9.   Plaintiff published over a dozen papers and reports in scientific magazines and International conferences.  Plaintiff co-authored 2 books published by SAS Institute in 1995 and 1998. One of her books on statistics is used in more than 20 universities globally.

10.   Plaintiff was offered a position at and began work for Defendant Office Depot as Lead Data Scientist on May 8, 2017.

11.   As part of her assigned duties at the company, Plaintiff learned that one of the company vendors, Defendant McKinsey & Company was hired to develop statistical predictive models that would be used in marketing campaigns to target Office Depot customers who have high propensity to buy Office Depot's products. Defendant McKinsey & Company was also hired to develop predictive models for creating personalized offers for individual customers and to calculate customer life values for the purposes of engaging in marketing campaigns.

12.   Instead Defendant McKinsey & Company provided the company with predictive models that were nonsensical.

13.   The predictive models were nonsensical because:

   a)  Defendant McKinsey & Company developed the regression models in which the regressors (explanatory variables) were not statistically independent.  The regressors correlated with one another to a higher degree than they correlated with the dependent variable. This violated fundamentals of the regression method and these

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

violations led to false and misleading results.

b)  To estimate regression coefficients, Defendant McKinsey & Company used data that contained negative sales, missing values and questionable large sales values. Mandatory data cleansing was not performed.

c)  Defendant McKinsey & Company copied the same simple computer program multiple times and changed the name of a dependent variable claiming they developed a new predictive model.  The computer program code the vendor used can be easily copied from a basic and introductory statistical modeling textbook.

d)  In the predictive models Defendant McKinsey & Company used independent variables. The variables used included total sales for the first quarter of a year, total sales for the first half of a year and the total sales for entire year.  In so doing, Defendant McKinsey & Company inflated total sales for a year by counting sales for the first quarter three times, and sales for the second quarter twice.  The independent variables the vendor used were thus dependent and correlated. This too violated fundamental principle of the regression method and this violation led to false and misleading results.

e)  Plaintiff performed a test of the quality of prediction of Defendant McKinsey & Company models. Plaintiff built a miss-classification table which is the "gold standard" for testing the quality of predictive models.  She used the same data that was used by Defendant McKinsey & Company to estimate coefficients of the predictive model. Results show that out of 13,772 customers who made a purchase

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

in the company stores Defendant McKinsey & Company predicted only 2 customers.

14. On May 22, 2017, during a face-to-face meeting with Defendant McKinsey & Company representative Steven Clark, Plaintiff complained about models that were being used and raised the above questions. Mr. Clark responded by laughing at Plaintiff. He did not make any attempt to explain any of her questions or dispute any of her findings.

15. Plaintiff determined that Defendant McKinsey & Company had billed Office Depot two million dollars ($2,000,000) annually plus travel expenses and more than fourteen million dollars ($14,000,000.00) from January 2011 through October 2017 for work they did not actually perform.

16. After checking and double checking her findings regarding the Defendant McKinsey & Company statistical work, Plaintiff reported her findings to Defendant Office Depot Director Mr. Ranjith Chelasani, Plaintiff's direct supervisor, and to Defendant Office Depot Sr. Director Mr. Slava Sambu. Plaintiff requested Mr. Chelasani and Mr. Sambu report the fraud to the company General Counsel and to stop immediately using all predictive models developed by the Defendant McKinsey & Company.

17. Mr. Chelasani and Mr. Sambu attempted to cover up the fraudulent statistical work claiming the evidence Plaintiff had brought them was not convincing and that they could not inform management or the team members that the work Defendant McKinsey & Company had tendered to the company was wrong.

18. On June 14, 2017 at 12:14 AM, Plaintiff reported Defendant McKinsey & Company's fraud statistical work directly to Defendant Office Depot's CEO, Mr. Gerry Smith in an e-mail. (See Email to Smith Attached hereto as Exhibit A). That morning at 10:47

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

AM, Smith responded asking his assistant to set up a meeting with Plaintiff. (See Response Email Attached hereto as Exhibit A).

19.   On June 19, 2017 Plaintiff met with Defendant Office Depot CEO Smith in his office and presented him with her findings of the vendor fraud by Defendant McKinsey & Company. Defendant Office Depot CEO Smith reviewed the findings during the meeting and concluded aloud that Defendant McKinsey & Company was engaging in fraud. CEO Smith then asked Plaintiff if she had presented her findings to her managers and how they responded.

20.   Plaintiff informed Defendant Office Depot CEO Smith that her warnings were completely ignored, and that Defendant Office Depot was continuing to use the corrupt and fraudulent predictive models in multi-million dollars marketing campaigns resulting in immense financial damages to the company. Plaintiff then confirmed that her direct supervisor's refusal was documented in e-mails to Defendant Office Depot CEO Smith.  Defendant Office Depot CEO Smith then called Defendant Office Depot Chief Administrative Officer (CAO) Mr. Michael Allison to join the meeting.

21.   While waiting for Mr. Allison to join the meeting, Defendant Office Depot CEO Smith reviewed the correspondence between Plaintiff and her managers in regards to the vendor fraud.  In the midst of reading the e-mails Defendant Office Depot CEO Smith exclaimed, "this blows my mind" and then clearly stated he would demand that the Defendant McKinsey & Company reimburse Defendant Office Depot.

22.   When Mr. Allison arrived Defendant Office Depot CEO briefed him on Plaintiff's findings and on the response by her managers. Defendant Office Depot CEO showed Mr. Allison the absurdity of Defendant McKinsey & Company's predictive models

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

1        including but not limited to the wrongful use of the same variables multiple times.

2   23.  Defendant Office Depot CEO then asked Mr. Allison to protect Plaintiff from any

3        retaliation.  Mr. Allison agreed, stating that he believed that the cover up is worse than

4        fraud itself. Mr. Allison asked Plaintiff to bring him all the materials for his evaluation

5        in order to make a decision about next steps.

6   24.  On June 20, 2017, Plaintiff tendered all the evidence she had gathered to Mr. Allison

7        including email correspondences and the critical portions of the model development

8        work performed by Defendant McKinsey & Company demonstrating fraudulent

9        programing/modeling.

10  25.  During the same week that Plaintiff reported her findings to Defendant Office Depot

11       CEO, Mr. Chelasani and Mr. Sambu requested from Plaintiff to prepare a presentation

12       for SVP of Marketing Ms. Diane Nick about current state of predictive modeling.

13       Importantly, Mr. Sambu specifically ordered Plaintiff to lie about the findings

14       claiming that there were "some minor concerns" with predictive models, instead of

15       calling out the fraud and abuse.

16  

17  26.  Plaintiff refused to take part in any conspiracy to defraud Office Depot's investors.

18       (See Monday June 27, 2017 4:26 pm e-mail attached hereto as Exhibit B).

19       Remarkably, Mr. Sambu and Mr. Chelasani retaliated against Plaintiff by assigning

20       her the impossible task of single-handedly developing a replacement model for the

21       fraudulent predictive models – a task that typically requires several individuals

22       working for months. When Plaintiff protested the adverse assignment, Mr. Sambu

23       and Mr. Chelasani chastised Plaintiff claiming that she was not doing job.

24  27.  On June 30, 2017 Plaintiff was asked to attend a meeting with Mr. Allison and Ms.

25       Nick. At the meeting, Plaintiff explained her findings of Defendant McKinsey &

26  

27                          - 7 of 31 –

28                    OBEIDY & ASSOCIATES, P. A.

                  Kolosova v. Office Depot et al.
                  COMPLAINT FOR DAMAGES

Company's fraud to Mr. Allison and Ms. Nick. During the meeting Mr. Allison and Ms. Nick decided that Plaintiff would perform a full investigation of the Defendant McKinsey & Company. The investigation would date back to the onset of the relationship with Defendant McKinsey & Company.

28.   Plaintiff immediately began the investigation. She successfully gathered all available agreements, Statements of Work (SOWs), and invoices paid to Defendant McKinsey & Company. She reviewed the computer programs developed by Defendant McKinsey & Company. She immediately confirmed from the documents and the models that Defendant McKinsey & Company was engaging in fraudulent conduct.

29.   On July 10, 2017 after completing the investigation Plaintiff was tasked to undertake by Mr. Allison, Plaintiff presented the results of her investigation to Ms. Nick. Plaintiff's investigation yielded the following results:

a.   Defendant McKinsey & Company provided services to the company from 2011 through September 2017.

b.   In 2013 and 2014 Defendant McKinsey & Company did not submit a Scope of Work and submitted invoices that lacked any details or itemization.

c.   Deliverables in two Scopes of Work for 2015 and a Scope of Work for 2016 were identical.

d.   In 2017 Defendant McKinsey & Company did not submit a Scope of Work and submitted invoices that lacked any details or itemization.

e.   The predictive models that the vendor delivered were fraudulent and wrong.

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

f.      The vendor was paid almost $14,000,000 for work it did not perform.

g.      Defendant Office Depot continued to use the fraudulent models after Plaintiff blew the whistle to CEO Smith about the fraud perpetrated by Defendant McKinsey & Company.

30.     On July 11, 2017 one day after Plaintiff shared her finding with Ms. Nick, Ms. Nick stripped Plaintiff of all of her responsibilities as a Lead Data Scientist. Ms. Nick excluded Plaintiff from the modeling team. Ms. Nick also required Plaintiff to report directly to her and forced her to move closer to Ms. Nick offices so that Ms. Nick could see what Plaintiff was doing and who she was meeting with on a daily basis.

31.     On July 14, 2017 Plaintiff met with Mr. Allison and shared the findings of her investigation. Plaintiff detailed the retaliation she was subjected to by Ms. Nick to Mr. Allison. Plaintiff explained that Defendant McKinsey & Company's fraud was very easy to identify and it was almost impossible for Office Depot's marketing team to not have discovered the fraud that was being perpetuated for more than six (6) years. Plaintiff then inquired into the possibility that SVP Marketing Ms. Nick was covering up the vendor fraud. Mr. Allison responded that he believed that Ms. Nick was "in it". He informed Plaintiff that he was taking over the matter and that although it might take him some time to resolve the issue he wanted Plaintiff "not to go anywhere".

32.     On July 17, 2017 as per Mr. Allison's request, Plaintiff informed Mr. Allison via e-mail that nothing was being done to stop the use of Defendant McKinsey & Company's fraudulent and wrong predictive models. (See July 17, 2017 e-mail attached hereto as Exhibit C.)

33.     Two days later, on July 19, 2017 during a one on one meeting with Ms. Nick, Plaintiff

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

was threatened with termination. Ms. Nick demanded that Plaintiff stop reporting that nothing was being done to stop the use of the fraudulent models developed by Defendant McKinsey & Company.  Ms. Nick told Plaintiff that Plaintiff could not "live here and complain that nothing was being done…. Otherwise it will be a problem".

34.   Ms. Nick ordered Plaintiff to not report what was happening with respect to Defendant McKinsey & Company to CAO Mr. Allison; an order that directly contradicted the orders Mr. Allison had given Plaintiff.  At the same meeting, Ms. Nick demanded Plaintiff develop a future-looking plan for predictive modeling and marketing analytics.

35.   Plaintiff worked diligently and came up with a solid plan for creating predictive models and marketing analysis.  Plaintiff tendered the plan to Ms. Nick later that same evening.

36.   Two days later, on July 21, 2017 Plaintiff met with Ms. Nick to discuss her proposal. Although Ms. Nick said that the proposals were "right on point", she stated that there were no funds to implement this plan. Plaintiff stated that she could implement the plan by herself, but cautioned it would take more time if she did it on her own.

37.   Ms. Nick stonewalled ordering Plaintiff not to perform the suggested corrective tasks. Instead, Ms. Nick stated that Plaintiff should only engage in hiring people who "will help [Plaintiff] think." Ms. Nick not only prevented Plaintiff from resolving the issues, she further demoted Plaintiff in a cruel and humiliating manner (See E-mail chain attached hereto as Exhibit D).

38.   On July 25, 2017 Plaintiff updated Mr. Allison about status of the vendor fraud as was requested of her.  Moreover, she complained to Mr. Allison about the retaliation she was subjected to by Ms. Nick.  (See E-mail chain attached hereto as Exhibit E).

39.   On July 27, 2017 Mr. Allison informed Plaintiff that the company was opening a formal internal investigation. He insinuated that Plaintiff's managers were being investigated by

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

ordering Plaintiff not to disclose the existence of the investigation to Ms. Nick, Mr. Sambu or Mr. Chelasani.  (See E-mail chain attached hereto as Exhibit F).

40.   From early August 2017 through early September 2017 Plaintiff met on three separate occasions with VP Chief Audit Executive Ms. Jennifer Goschke, the individual assigned by Mr. Allison to conduct the formal investigation. (See E-mail chain attached hereto as Exhibit G).  Plaintiff cooperated fully with all aspects of the investigation as requested.

41.   On or about August 19, 2017, the company substantially increased the retaliation they subjected Plaintiff to by placing her and her family in harm's way.  Plaintiff received a threatening phone call from an anonymous male on her home phone number that is known to a very small circle of family members. The man on the phone asked for Tanya. Plaintiff stated it was she who had answered.  He responded, "You should think about your 6 children". Plaintiff, frightened by the threat, immediately hang up.

42.   Plaintiff informed Ms. Goschke about the incident the next day. Ms. Goschke promised she would look into who had leaked Plaintiff's findings and stated she informed Chief Compliance Officer Ms. Katrina Lindsey about the threat Plaintiff received over the phone.

43.   On September 5, 2017 Ms. Goschke claimed that the investigation had run its course and there was no way to prove that any Office Depot executives had received any kickbacks or were involved in any way. She further retaliated against Plaintiff by suggesting Plaintiff contact HR to discuss "other opportunities" at the company. Moreover, in an effort to mussel Plaintiff she demanded that Plaintiff stop using the "inflammatory term fraud".

44.   Thereafter, on September 5, 2017 Plaintiff sent an email to Mr. Allison and Defendant Office Depot CEO Smith informing them about the situation with the internal

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

investigation and suggested that they perform an external investigation (See E-mail chain attached hereto as Exhibit H). Plaintiff was following the directions she had been given by Mr. Allison to keep him informed and to not go away.

45. While assessing financial damages caused by McKinsey to Office Depot's marketing campaigns, Plaintiff discovered the existence of a fraud-prone accounting environment in the Office Depot database. On September 11, 2017 Plaintiff reported to Chief Accounting Officer Mr. Michael Rabinovitch her findings that she discovered in the company database. Plaintiff reported that the existing error-prone computing environment could be used to manipulate earnings. Plaintiff was concerned that earnings manipulation was a clear violation of Sarbanes Oxley law. Plaintiff never received a response from Mr. Rabinovitch.

46. On September 14, 2017 Plaintiff was informed that Ms. Nick left the company. Ms. Jerri DeVard then was hired as Chief Marketing Officer and Plaintiff was assigned to report to VP Marketing Ms. Lukana Justin.

47. On September 19, 2017 during a one on one meeting with Ms. Justin, Ms. Justin declared that she was "excited over the moon" that Ms. Nick was forced to leave the company. She stated that Plaintiff was the most educated, skilled and experienced professional in analytics and modeling teams in Office Depot and that the company had deeply suffered from working with Ms. Nick.

48. At that meeting Ms. Justin asked Plaintiff to prepare road map and a plan of what should be done to move forward and to fix existing situation in marketing department. Ms. Justin described the marketing department as a "disaster" multiple times. During this meeting Plaintiff explained the situation with the vendor and asked Ms. Justin to make sure that Office Depot's marketing department no longer use the vendor predictive models.

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

1          Plaintiff informed Ms. Justin about the complaints she had made to top executives.

2    49.   Following the meeting Ms. Justin sent an e-mail to Mr. Chelasani asking him to provide a

3          list of all current uses of the vendor models. Mr. Chelasani lied when he responded with

4          an email stating that the vendor models were not in use any more.

5    50.   Plaintiff, also on the e-mail chain, corrected the misstatement of fact citing multiple

6          examples where the vendor models were still being used by Office Depot. Mr. Chelasani

7          responded that he did not have time to correct the situation because he had other

8          priorities.

9    51.   On or about September 27, 2017 at a meeting with Ms. Justin and Sr. IT Director Mr.

10         Prakash Sankaran, Plaintiff presented a detailed plan for Actionable Analytics

11         Framework.  Mr. Sankaran exclaimed that he never heard about such an outstanding

12         actionable analytical development. He stated that no other analytical vendors he

13         interviewed proposed anything that came close to being as comprehensive as Plaintiff's

14         plan.  Furthermore, he recommended that there was no way to move forward without first

15         to deploy Plaintiff's proposal.

17   52.   Around the same time, Plaintiff was invited to a meeting to discuss the estimation of

18         Customer Life Value (CLV). The CLV estimations were used for the purpose of creating

19         hyper-targeted marketing campaigns. During the meeting, the team complained about the

20         poor campaign performance and the team voiced their suspicion that the CLV did not

21         advance correct estimates.

22   53.   Plaintiff informed the team that the estimations the team used were based on the

23         fraudulent McKinsey models. The team asked Plaintiff for a quick fix solution to the

24         problem. The following day Plaintiff came up with a proposal designed to correct the

25         CLV estimation. Plaintiff's proposal required a few weeks to implement.

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

54.  The team then asked Plaintiff to provide them with a solution to fix the vendor model. Plaintiff responded to the team's request explaining that Defendant McKinsey & Company's model could not be fixed and she cited the necessary facts to support her. The team abruptly stopped any further communication with Plaintiff.

55.  On October 04, 2017 Plaintiff met with Chief Compliance Officer Ms. Katrina Lindsey. During the meeting, Ms. Lindsey said that Chief Accounting Officer Mr. Rabinovitch had forwarded Plaintiff's September 11, 2017 email. Ms. Lindsey then tried to convince Plaintiff that other retail organizations were doing the same type of accounting. Plaintiff explained that what was being done was wrong and that there was an easy way to fix the problem in the database. Plaintiff tried to explain how the simple fix would ensure the integrity of the earnings calculation. Ms. Lindsey responded by claiming she would consult with her friend at Michaels, Inc. Plaintiff was puzzled as to why she would not ask someone within the company. Ms. Lindsey promised she would meet with Plaintiff in two weeks.

56.  As a follow up to the meeting with Ms. Lyndsey, on October 04, 2017 Plaintiff sent her an email with detailed explanation of how the earnings manipulations could be performed in the existing computing accounting environment. Plaintiff also forwarded this email to Ms. Justin. Ms. Justin asked some follow up questions in a responding email.

57.  The next day Ms. Justin asked Plaintiff into her office to explain more. At this meeting Plaintiff explained to Ms. Justin more about the error-prone computing environment that allows the company to manipulate earnings. Specifically, the program allowed Office Depot to misrepresent the cost of revenue in the company's SEC filings. Ms. Justin told Plaintiff that Mr. Rabinovich was her good friend and she would talk to him and arrange a meeting between Plaintiff and Mr. Rabinovitch. Such a meeting never happened.

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

58.   On October 11, 2017, Plaintiff met with Mr. Allison to update him on her progress. During the meeting he indicated he too had made substantial progress with his investigation into wide-spread fraud within Office Depot. Moreover, he indicated he was continuing to gather information and he asked Plaintiff to do the same.

59.   On October 12, 2017 Plaintiff was invited to a meeting with Mr. Allison and VP IT Mr. Andy Parry. Mr. Allison explained that he needed Mr. Parry to review Defendant McKinsey & Company's works delivered to the company so that he could make a case for a refund and for damages caused by the use of the fraudulent models.

60.   The next day, on October 13, 2017, Mr. Allison was fired by Defendant Office Depot CEO Smith. Mr. Allison told Plaintiff a few days after his termination that on October 12, 2017 he had sent an email Defendant Office Depot CEO Smith providing him with an update about the vendor fraud and ways to remediate the fraud.  Mr. Allison told Plaintiff that he never heard anything from CEO Smith regarding that email. Mr. Allison wrote to Plaintiff that he did not "have much faith in what [was] going on [at Office Depot]"

61.   On October 17, 2017, Defendant Office Depot retaliated against Plaintiff by terminating her employment. At approximately 4:00 pm Ms. Justin's Administrative Assistant informed Plaintiff that her meeting with Ms. Justin was moved to another location. Plaintiff went to that room where she found an HR representative and Ms. Justin. Ms. Justin informed Plaintiff that her position was eliminated and left the room.

62.   The HR representative provided Plaintiff with various documents. Plaintiff again complained to the HR representative that the company was violating Sarbanes-Oxley, a Federal law that protects Plaintiff from the retaliation and termination. HR representative said that she did not know anything about it.

63.   Plaintiff was not allowed to pick up her personal belongings from her work place and

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

1   another HR representative brought Plaintiff her backpack. Plaintiff was escorted by an

2   HR representative to the exit.

### FIRST CAUSE OF ACTION
**Whistleblower Retaliation
in Violation of Sarbanes-Oxley Act
– As against Office Depot–**

6   64.   Plaintiff repeats and realleges each and every allegation in Paragraph 1 through 63

7         above, as though fully set forth at length herein, excepting those allegations which are

8         inconsistent with this cause of action.

9   65.   At all material times Section 806 of the Sarbanes Oxley Act of 2002 was in effect and

10        binding on Defendant Office Depot.

11  66.   Section 806 of the Sarbanes Oxley Act of 2002 prohibits employers such as Defendant

12        Office Depot from discharging, constructively discharging, demoting, threatening,

13        harassing or in any manner discriminating or retaliating against any employee because

14        he or she provided information, caused information to be provided, or assisted in an

15        investigation by a federal regulatory or law enforcement agency, or an internal

16        investigation by the company relating to alleged mail fraud, wire fraud, bank fraud,

17        securities fraud, violations of SEC rules and regulations or violations of federal law

18        relating to fraud against shareholders.

19  67.   In addition, Section 806 of the Sarbanes Oxley Act of 2002, states that an employer may

20        not discharge or in any manner retaliate against employee because he or she filed,

21        caused to be filed, participated in, or assisted in a proceeding relating to alleged mail

22        fraud, wire fraud, bank fraud, securities fraud, violations of SEC rules and regulations or

23        violations of federal law relating to fraud against shareholders.

24  68.   If an employer takes retaliatory action against an employee because he or she engaged in

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

any of these protected activities, the employee can file a complaint with the Secretary, United States Department of Labor, Occupational Safety and Health Administration ("OSHA").

69.   Plaintiff filed a timely whistleblower complaint with OSHA (Complaint Number 4-1050-18-096), and 180 days have elapsed since filing that complaint on February 12, 2018. (See Exhibit "A", OSHA Complaint)

70.   No decision has been issued by OSHA, and Plaintiff has not been the cause of any delay in the issuance of a decision.  Accordingly, Plaintiff is entitled to seek relief in district court by jury trial. Moreover, no predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section of SOX.

71.   Defendant harassed, threatened, discharged and retaliated against Plaintiff, after Plaintiff made oral and written complaints regarding what she reasonably believed to be illegal and/or unlawful conduct in violation of state and federal statutes, rules and regulations.

72.   Plaintiff is informed and believes, and thereon alleges that because of her making complaints regarding Defendant's illegal conduct and/or conduct Plaintiff reasonably believed to be illegal, Plaintiff was demoted, subjected to a hostile working environment and/or discharged from her employment and/or otherwise discriminated and retaliated against by Defendant after she had made the aforesaid complaints about illegal conduct.

73.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pain and mental anguish and emotional distress.

74.   Plaintiff has further suffered and will continue to suffer a loss or earnings and other employment benefits, damage to her reputation for which Plaintiff is entitled to general compensatory damages in amounts to be proven at trial.

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

75.   Defendant's actions constituted a willful violation of the above-mentioned federal laws and regulations. As a direct result, Plaintiff has suffered and continues to suffer substantial losses related to the loss of wages and is entitled to recover costs and expenses and attorney's fees in seeking to compel Defendant to fully perform its obligations under state and federal law, in amounts according to proof at time of trial.

76.   The conduct of Defendant described hereinabove was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's right. ., and further, with the intent, design and purpose of injuring Plaintiff.

77.   Defendant committed the acts alleged hereinabove by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover nominal, actual, compensatory, punitive and exemplary damages in amounts according to proof at the time of trial, to the full extent allowable by law, in addition to any other remedies and damages allowable by law.

78.   As a proximate result of the actions and conduct described hereinabove, which constitute violations of Section 806 of the Sarbanes-Oxley Act of 2002 ("SOX"), Plaintiff has been damaged in an amount according to proof at the time of trial, and seeks make-whole relief, civil penalties and attorney's fees against Defendant pursuant to SOX.

**SECOND CAUSE OF ACTION**
**Violation of the Florida Whistleblower Act**
**– As against Office Depot–**

79.   Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 63 above, as though fully set forth at length herein.

80.   This is an action for violation of Florida's Private Sector Whistleblower Act, Fla. Stat.

- 18 of 31 –

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

§§448.102(3), which provides in pertinent part as follows:

Prohibitions – An employer may not take any retaliatory personnel action against an employee because the employee has:

(3)     Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

81.    At all times material hereto, Plaintiff was an Employee as defined by Fla. Stat. §448.101(2).

82.    At all times material hereto, Defendant Office Depot was an Employer as defined by Fla. Stat. §448.101(3).

82.    At all times material hereto, Plaintiff held the title of Lead Data Scientist.  Plaintiff was qualified for the position she held and worked diligently during her employment.

83.    Throughout her employment with Defendant Office Depot, Plaintiff issued several lawful complaints to her direct supervisor, Office Depot's CEO and Office Depot's Human Resources, about her believe that Office Depot violated Sarbanes Oxley Act by engaging in financial fraud and by manipulating accounting records which affected stock prices.

84.    Defendant Office Depot violated Florida's Private Sector Whistleblower Act when it retaliated against Plaintiff for issuing the above-mentioned lawful complaints objecting to a violation of SOX, through the conduct of its agents, servants, and/or employees.

85.    The retaliatory conduct taken against Plaintiff by Defendant Office Depot, included, but was not limited to:

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

a.   Humiliating Plaintiff;

b.   Reducing Plaintiff's responsibilities;

c.   Hindering Plaintiff's investigation of the fraudulent predictive models provided by Defendant McKinsey and the effects on Office Depot;

d.   Causing Plaintiff and her family to be threatened;

e.   Unlawfully terminating Plaintiff's employment.

86.   Defendant Office Depot's actions as described above in Paragraphs 1-63 violated Fla. Stat. §448.102 and constituted a prohibitive employment practice.

87.   As a direct and proximate result of Defendant Office Depot's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to, losses incurred in seeking subsequent comparable employment, earnings, deferred compensation, earning capacity, back pay and front pay, past, present, and future income, compensatory damages, lost wages and other employee benefits, all to his detriment, in an amount to be shown according to proof.

88.   As a further proximate result of Defendant Office Depot's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress, ongoing sadness, nausea, nightmares, irritability, nervousness, anxiety, loss of confidence, grief, sleeplessness, helplessness, hopelessness, fear, humiliation, loss of self-esteem, and other general damages, all to his detriment, in an amount to be shown according to proof.

89.   Moreover, as a result of Defendant Office Depot's acts as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as provided by Fla. Stat.

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

§448.104.

90.   Plaintiff demands judgment against Defendant Office Depot, a trial by jury on all issues so triable and any other relief this Court deems just and proper.

**THIRD CAUSE OF ACTION**
**(Deceit – as against Defendant Office Depot)**

91.   Plaintiff repeats and realleges each and every allegation in Paragraph 1 through 63 above, as though fully set forth at length herein.

92.   Defendant Office Depot fraudulently deceived Plaintiff by representing to her that she would be protected from retaliation if she investigated the fraudulent predictive models purchased for tens of millions of dollars by Office Depot from Defendant Mckinsey.

93.   At the time Defendant made the above representations, Defendant was aware but did not inform Plaintiff that did not intend to protect Plaintiff from being retaliated against for investigating Office Depot's use of the McKinsey fraudulent predictive models.  This fact was not obvious and was not known to Plaintiff.

94.   As a direct and proximate result of Defendant Office Depot's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to, losses incurred in seeking subsequent comparable employment, earnings, deferred compensation, earning capacity, back pay and front pay, past, present, and future income, compensatory damages, lost wages and other employee benefits, all to his detriment, in an amount to be shown according to proof.

95.   As a further proximate result of Defendant Office Depot's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress, ongoing sadness, nausea, nightmares, irritability, nervousness, anxiety, loss of confidence, grief, sleeplessness, helplessness, hopelessness, fear, humiliation, loss of self-esteem, and

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

other general damages, all to his detriment, in an amount to be shown according to proof.

96.  Plaintiff demands judgment against Defendant Office Depot, a trial by jury on all issues so triable, and any other relief the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Negligent Misrepresentation –**
**as against Defendant Office Depot**

97.  Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 63 above, as though fully set forth at length herein.

98.  Defendant Gerry Smith was acting within the course and scope of his employment with Defendant Office Depot when he made a false representation of a material fact to Plaintiff.

99.  Defendant Gerry Smith promised Plaintiff that she would not be subjected to any retaliation for making a lawful complaint regarding a violation of SOX and for continuing to investigate the use of Defendant McKinsey's fraudulent predictive models.

100.  The aforementioned representations were, in fact, false and Defendant Smith knew or should have known them to be false.

101.  Defendant Gerry Smith made the representations set forth in Paragraph 99 as assertions of fact.

102.  At the time the above-referenced representation was made by Defendant Smith to Plaintiff, Plaintiff was ignorant of the falsity of Defendant's representations and believed them to be true.

103.  Had Plaintiff known the actual facts, she would not have remained employed with Defendant Office Depot or to have conducted the investigation into the McKinsey

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

fraudulent predictive models.

104.   Plaintiff's reliance on Defendant Office Depot's representations was justified as Defendant Office Depot appeared to be a reputable and forthright organization and appeared to possess a good reputation in the community.

105.   As a direct and proximate result of Defendant Office Depot's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial monetary losses and damages incurred in seeking subsequent comparable employment, earnings, deferred compensation, earning capacity, front pay, back pay and other employment benefits, all to her detriment, in an amount to be shown according to proof.

106.   As a further proximate result of Defendant Office Depot acts as alleged herein, Plaintiff has suffered and continues to suffer Emotional Distress, ongoing sadness, anger, mental anguish, nausea, nightmares, irritability, nervousness, anxiety, grief, loss of confidence, sleeplessness, helplessness, hopelessness, fear, embarrassment, humiliation, loss of self-esteem, and other general damages, all to her detriment, in an amount to be shown according to proof.

107.   Plaintiff demands judgment against Defendant Office Depot, a trial by jury on all issues so triable and any other relief the Court deems just and proper.

### FIFTH CAUSE OF ACTION
**FEDUPTA –**
**as against Defendant McKinsey & Company**

108.   Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 63 above, as though fully set forth at length herein.

109.   Plaintiff was, at all times material and relevant to this cause of action, an "interested person" as defined by Section 501.203 (6).

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

110.   Defendant McKinsey & Company was, at all times material and relevant to this cause of action, engaging in "trade or commerce" as defined by Section 501.203 (8).

111.   Defendant McKinsey & Company was, at all times material and relevant to this cause of action, providing a "thing of value" to Defendant Office Depot as defined by Section 501.203 (9) which included fraudulent predictive models used in determining which customers should receive coupons and for which Defendant Office Depot paid in excess of $14,000,000.

112.   At all times material to this cause of action Defendant McKinsey & Company violated Section 501.204 (1) and (2) by engaging in unconscionable acts or practices, and/or unfair or deceptive acts or practices in the conduct of any trade or commerce.

113.   Defendant McKinsey & Company intentionally provided Defendant Office Depot with fraudulent predictive models that did not perform as was required and expected.

114.   When Plaintiff confronted Defendant McKinsey & Company about the faulty models, Defendant McKinsey did not dispute or contest any of the findings Plaintiff brought to Defendant McKinsey & Company's attention.

115.   Plaintiff was terminated after she complained about the faulty models to Defendant Office Depot.

116.   Pursuant to Florida Statute Section 501.211 Plaintiff is entitled to recover her actual damages which she suffered as a result of Defendant McKinsey & Company's violation of Florida Unfair and Deceptive Practices Act.

117.   As a direct and proximate result of Defendant McKinsey's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial monetary losses and damages incurred in seeking subsequent comparable employment, earnings, deferred compensation, earning capacity, front pay, back pay and other employment benefits, all to her detriment, in an

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

amount to be shown according to proof.

118. As a further proximate result of Defendant McKinsey & Company's acts as alleged herein, Plaintiff has suffered and continues to suffer Emotional Distress, ongoing sadness, anger, mental anguish, nausea, nightmares, irritability, nervousness, anxiety, grief, loss of confidence, sleeplessness, helplessness, hopelessness, fear, embarrassment, humiliation, loss of self-esteem, and other general damages, all to her detriment, in an amount to be shown according to proof.

119. Moreover, as a result of Defendant Office Depot's acts as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as provided by Fla. Stat. §501.2105.

120. Plaintiff demands judgment against Defendant Office Depot, a trial by jury on all issues so triable and any other relief the Court deems just and proper.

## SIXTH CAUSE OF ACTION
### Tortious Interference with At-will Employment
### As Against Defendant Smith

121. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 63 above, as though fully set forth at length herein.

122. Plaintiff alleges that at all times relevant to this cause of action, Defendant Smith was not acting within the course and scope of his employment, but rather was acting with ulterior purposes and without an honest belief that his actions would benefit his employer, Defendant Office Depot.

123. Defendant Smith tortiously interfered with Plaintiff's at-will employment by:

    a.    Allowing his subordinates to retaliate against Plaintiff after she complained

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

about violations of SOX;

    b.     Allowing Plaintiff to be threatened with termination and with bodily harm.

    c.     Allowing Plaintiff to be terminated for complaining about violations of SOX.

124.    As a direct and proximate result of Defendant Smith's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to, losses incurred in seeking subsequent comparable employment, earnings, deferred compensation, earning capacity, back pay and front pay, past, present, and future income, compensatory damages, lost wages and other employee benefits, all to her detriment, in an amount to be shown according to proof.

125.    As a further proximate result of Defendant Smith's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress, ongoing sadness, nausea, nightmares, irritability, nervousness, anxiety, loss of confidence, grief, sleeplessness, helplessness, hopelessness, fear, humiliation, loss of self-esteem, and other general damages, all to her detriment, in an amount to be shown according to proof.

126.    Plaintiff demands judgment against Defendant Smith, a trial by jury on all issues so triable and any other relief this Court deems just and proper.

## SEVENTH CAUSE OF ACTION
### Tortious Interference with At-will Employment
### As Against Defendant Justin

127.    Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 63 above, as though fully set forth at length herein.

128.    Plaintiff alleges that at all times relevant to this cause of action, Defendant Justin was

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

not acting within the course and scope of her employment, but rather was acting with ulterior purposes and without an honest belief that her actions would benefit her employer, Defendant Office Depot.

129. Defendant Justin tortiously interfered with Plaintiff's at-will employment by:

a.    Retaliating against Plaintiff for her complaints about violations of SOX;

b.    Terminating Plaintiff without cause for complaining about SOX.

130. As a direct and proximate result of Defendant Justin's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to, losses incurred in seeking subsequent comparable employment, earnings, deferred compensation, earning capacity, back pay and front pay, past, present, and future income, compensatory damages, lost wages and other employee benefits, all to her detriment, in an amount to be shown according to proof.

131. As a further proximate result of Defendant Justin's acts as alleged herein, Plaintiff has suffered and continues to suffer emotional distress, ongoing sadness, nausea, nightmares, irritability, nervousness, anxiety, loss of confidence, grief, sleeplessness, helplessness, hopelessness, fear, humiliation, loss of self-esteem, and other general damages, all to her detriment, in an amount to be shown according to proof.

132. Plaintiff demands judgment against Defendant Justin, a trial by jury on all issues so triable and any other relief this Court deems just and proper.

**EIGHTH CAUSE OF ACTION**
**–Intentional Infliction of Emotional Distress–**
**as against Defendant Office Depot**

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

133.  Plaintiff repeats and realleges each and every allegation in paragraph 1 through 63, as though fully set forth at length herein.

134.  Defendant Office Depot engaged in extreme and outrageous conduct when it allowed one of its current or former employees to call Plaintiff on her home number and threaten her and her family if she did not stop investigating the Defendant McKinsey & Company fraudulent predictive models.

135.  The conduct set forth herein above was extreme and outrageous and an abuse of authority and position of Defendant Office Depot.

136.  Said conduct was intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing such distress.

137.  Said conduct exceeded the inherent risks of employment and was not the sort of conduct normally expected to occur in the workplace.

138.  Defendant Office Depot abused its positions of authority toward Plaintiff and engaged in conduct intended to humiliate Plaintiff and to convey the message that he was powerless to defend her rights.

139.  The foregoing conduct did in fact cause Plaintiff to suffer extreme and/or severe emotional distress.

140.  As a proximate result of Defendants' conduct, Plaintiff suffered embarrassment, anxiety, humiliation, sleeplessness, helplessness, hopelessness, loss of confidence and emotional distress, and will continue to suffer said emotional distress in the future in an amount to be shown according to proof.

141.  As a further proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial losses incurred in compensation and other employment benefits, in

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

1   an amount to be shown according to proof.

2   142.   Plaintiff demands judgment against Defendant Office Depot, a trial by jury on all issues

3   so triable and any other relief this Court deems just and proper.

4

5   **PRAYER FOR RELIEF AS AGAINST DEFENDANT OFFICE DEPOT**

6   **WHEREFORE**, Plaintiff prays judgment against Defendant Office Depot as follows:

7

8   1.   For economic damages, including but not limited to, back pay and lost wages, in an

9   amount to be shown according to proof, for the first through fourth causes of action;

10  2.   For general damages and non-economic damages, mental and emotional distress

11  damages, damages for physical injuries and anguish, and other special and general

12  damages according to proof, for first through fourth causes of action and the eighth

13  causes of action.

14

15  3.   For an award of interest, including prejudgment interest, at the legal rate;

16  4.   For costs and fees of suit herein incurred;

17  5.   For such other and further relief as the Court may deem proper.

18  **PRAYER FOR RELIEF AS AGAINST DEFENDANT MCKINSEY & COMPANY**

19  **WHEREFORE**, Plaintiff prays judgment against Defendant McKinsey & Company as

20  follows:

21

22  1.   For economic damages, including but not limited to, back pay and lost wages, in an

23  amount to be shown according to proof, for the fifth cause of action;

24  2.   For general damages and non-economic damages, mental and emotional distress

25

26

27  - 29 of 31 –

28  OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

damages, damages for physical injuries and anguish, and other special and general damages according to proof, for first through fourth causes of action and the fifth cause of action.

3.   For an award of interest, including prejudgment interest, at the legal rate;

4.   For costs and fees incurred pursuant to Section 501.2105 of the Florida Statutes;

5.   For such other and further relief as the Court may deem proper.

### PRAYER FOR RELIEF AS AGAINST DEFENDANT SMITH

**WHEREFORE**, Plaintiff prays judgment against Defendant Smith as follows:

1.   For economic damages, including but not limited to, back pay and lost wages, in an amount to be shown according to proof, for the seventh cause of action;

2.   For general damages and non-economic damages, mental and emotional distress damages, damages for physical injuries and anguish, and other special and general damages according to proof, for the seventh cause of action.

3.   For an award of interest, including prejudgment interest, at the legal rate;

For such other and further relief as the Court may deem proper.

### PRAYER FOR RELIEF AS AGAINST DEFENDANT JUSTIN

**WHEREFORE**, Plaintiff prays judgment against Defendant Justin as follows:

1.   For economic damages, including but not limited to, back pay and lost wages, in an amount to be shown according to proof, for the sixth cause of action;

2.   For general damages and non-economic damages, mental and emotional distress

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

damages, damages for physical injuries and anguish, and other special and general

damages according to proof, for the sixth cause of action.

3.      For an award of interest, including prejudgment interest, at the legal rate;

For such other and further relief as the Court may deem proper.

Dated this 13th day of September, 2018

Respectfully submitted,
**OBEIDY & ASSOCIATES, P.A**.

By:  */s/ A. Andrew OBeidy*
A. Andrew OBeidy, Esq.,
Attorney for Tanya Kolosova

- 31 of 31 –

OBEIDY & ASSOCIATES, P. A.

Kolosova v. Office Depot et al.
COMPLAINT FOR DAMAGES

EXHIBIT "A"

**U.S. Department of Labor**     Occupational Safety and Health Administration
Atlanta Regional Office
Sam Nunn Federal Center
61 Forsyth Street, SW Room 6T50
Atlanta, Georgia 30303
(678) 237-0400
(678) 237-0447 FAX



February 21, 2018

Tanya Kolosova (Complainant)
c/o A. Andrew OBeidy, Attorney of OBeidy & Associates, P.A.
2755 East Oakland Park Blvd., Suite 225
Fort Lauderdale, FL 33306

Re: Office Depot, Inc./Kolosova/4-1050-18-096

Dear Ms. Kolosova:

This is to acknowledge receipt of your complaint of discrimination filed under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002, 18 U.S.C. 1514A (SOX), which you filed on February 12, 2018. Please save any evidence bearing on your complaint, such as notes, minutes, letters, or check stubs, *etc.*, and have them ready when the investigator named below meets with you. It will be helpful for you to jot down a brief factual account of what happened and to prepare a list of the names, addresses, and telephone numbers of the potential witnesses, together with a brief summary of what each witness should know. The investigator will be contacting you in the near future.

We are also notifying the party named in the complaint about the filing of the complaint and that we are conducting an investigation into your allegations. We are providing the named party with a copy of your complaint and information concerning the Occupational Safety and Health Administration's responsibilities under the law. You may obtain a copy of the pertinent statute, 29 CFR Part 1980, at http://www.whistleblowers.gov. Upon request, a printed copy of these materials will be mailed to you.

We request that any future documents that you submit to OSHA, you also send a copy to the Respondent at the address below:

**Office Depot, Inc.**
**6600 N. Military Trail**
**Boca Raton, FL 33496**

If the information provided contains private, personally identifiable information about individuals other than you, such information, where appropriate, should be redacted before disclosure. OSHA may contact the party directly for the unredacted copy, if necessary.

OSHA will provide to you (or to your legal counsel if you are represented by counsel, or to your authorized representative) a copy of all of the respondent's submissions to OSHA that are responsive to your whistleblower complaint. In addition, OSHA will disclose to



the parties in this case any other information relevant to the resolution of the case, because evidence submitted by the parties must be tested and the opposing party provided the opportunity to fully respond. If information provided contains personal, identifiable information about individuals other than you, such information, where appropriate, will be redacted before disclosure.

Attention is called to your right and the right of any party to be represented by counsel or other representative in this matter. In the event you choose to have a representative appear on your behalf, please complete the Designation of Representative form enclosed and forward it promptly.

All submissions and correspondence, including changes to your address or telephone number should be made to following investigator:

**Maria Colon, Regional Investigator**
**Office of the Whistleblower Protection Program**
**U.S. DOL-OSHA**
**1000 S. Pine Island Road, Suite 100**
**Fort Lauderdale, FL  33324-4029**
**(954) 423-0389 Office (954) 424-3073 Fax**
**(404) 772-6550 Cell**
**Email: colon.maria@dol.gov**

You are expected to cooperate in the investigation of your complaint and failure to do so may cause your complaint to be dismissed.

Sincerely,

Gloria E. Colón
Regional Supervisory Investigator

Enclosure: Designation of Representative

# U.S DEPARTMENT OF LABOR
## OCCUPATIONAL SAFETY AND HEALTH ADMINSTRATION

### *DESIGNATION OF REPRESENTATIVE*

**COMPANY NAME:** Tanya Kolosova

**CASE NUMBER:** 4-1050-18-096

The undersigned hereby enters his appearance as representative in the above captioned matter:

| | Representative's Address and Zip Code |
|---|---|
| **Signature of Representative** | |
| **Type or Print Name** | |
| **Title** | ( ) |
| | **Area Code        Telephone Number** |
| **Date** | |
| | **E-mail Address** |

## United States of America
### Department of Labor
#### Occupational Safety and Health Administration



(***THIS STATEMENT DOES NOT APPLY TO MANAGEMENT.***) I understand that this statement will be held in confidence until such time as I may be called to testify in a court proceeding, at which time it may be produced upon demand of opposing counsel. Additionally, this statement may be made available to other agencies if it will assist them in the performance of their statutory functions. This statement may be subject to disclosure only in accordance with applicable statute(s) and agency policy. __TK__ **Initial** (***THIS STATEMENT DOES NOT APPLY TO MANAGEMENT.***)

**11(c)(1) of OSH Act:** No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this Act. __TK__ **Initial** (Applies to all)

**Name:** ___Tanya Kolosova c/o Obeidy and Associates PA___ **Address:** ___2755 East Oakland Park Blvd. Suite 225___

**City:** ___Fort Lauderdale___ **State:** __FL__ **Zip:** 33306 **Phone/Email:** ___andrew@obdlegal.com___

I am/was (circle one) employed by: ___Office Depot___ **From:** ___5/08/17___ to: __10/17/17__

**Position:** ___Lead Data Scientist___ **Time in Position:** 5 mos **Supervisor:** ___Director Chelassani___

*I hereby swear or affirm and say:*

That I was retalaited against and ultimately terminated for complaining about violations of Sarbanes Oxley by Office Depot as indicated in the statement attached hereto which it true and accurate to the best of my knowledge.

**Choose one of the first two (2) statements:**

____**Initial** I have read and understand the foregoing statement of ___ pages. I have been given the opportunity to make corrections. Each page is numbered. I have initialed each correction and initialed or signed each page.

<strong>OR</strong>

____**Initial** The foregoing statement of ___ pages has been read to me. I have been given the opportunity to make corrections. Any corrections have been read back to me. Each page is numbered. I have initialed each correction and initialed or signed each page.

<strong>AND</strong>

____**Initial (Applies to all)** I declare under penalty of perjury under the laws of the United States of America that this statement is true and correct to the best of my knowledge. I understand it is a felony under 18 U.S.C. § 1001 to knowingly and willfully make a false statement or omit material facts in relation to a federal investigation.

**Review this statement with each witness:** I request that my statement be kept confidential to the extent allowed by law – **OR** – initial here _____ to waive confidentiality.

_____      _____      _____      _____
**Signature of Interviewee**           **Date**          **Investigator Signature**          **Date**



Initials:_____Page_____ of _____



## LEGAL

March 12, 2017

Maria Colón,
Regional Investigator
US Department of Labor – OSHA
Fort Lauderdale Area Office
1000 S. Pine Island Road, Suite 100
Fort Lauderdale, Florida 33324

# CONFIDENTIAL POSITION STATEMENT

Via e-mail to Maria Colón and Jason Nickerson, Assistant General Counsel, Office Depot;
Original to follow via U.S. Mail

   Re: <u>Tanya Kolosova's Charge under Sec. 806 of the Sarbanes-Oxley Act</u>

Dear Mrs. Colón:

   This firm represents Tanya Kolosova who was unlawfully terminated by Office Depot on October 17, 2017 after she engaged in protected activity under §806 of the Sarbanes-Oxley Act ("SOX"). This letter is submitted on her behalf as a formal OSHA charge alleging unlawful retaliation in violation of SOX.

   In summary, Ms. Kolosova, is a renowned expert and published author in statistics and analytical software development. During her tenure at Office Depot, Ms. Kolosova made lawful complaints about nonsensical statistical models which McKinsey & Company sold to Office Depot for more than fourteen million dollars. Ms. Kolosova also complained about Office Depot's ability to engage in earnings manipulations which could result in shareholder's being defrauded. After her complaints were made, yet not taken seriously by high-level executives, Ms. Kolosova suffered from a campaign of harassment and adverse actions including the altering of her work duties, intimidation tactics including threats of discipline, and threats of violence. Ultimately, she was abruptly terminated on October 17, 2017.

## <u>The Protected Activity Under SOX</u>

   Ms. Kolosova is a highly accomplished statistician and software engineer with approximately thirty years' experience in statistical modeling, forecasting, and computer software development. She received her Bachelor and Masters of Science in Mathematics and Systems Analysis from the Institute of Electronics in 1985.

Ms. Kolosova performed her Ph.D. research under supervision of Professor David M. Steinberg at Mathematical department of Tel-Aviv University, Israel. Ms. Kolosova worked as an Assistant Professor of Statistics at Tel-Aviv University in Tel-Aviv, Israel, a Lecturer and Researcher in the Department of Statistics at Simon Fraser University in Burnaby, Canada.

As an academic, Ms. Kolosova published over a dozen papers and reports in scientific magazines and International conferences. Ms. Kolosova co-authored 2 books published by SAS Institute in 1995 and 1998. One of her books is used in more than 20 universities globally.

Ms. Kolosova continued developing expertise in statistical modeling and analytics while working in various capacities at YieldWise Inc., Yahoo!, Nielsen, Interpublic Group of Companies Inc., and Investment Technology Group, Inc. Ms. Kolosova's analytical achievements were featured in the article published in Forbes magazine in 2006.

Due to her phenomenal background and strong expertise, Ms. Kolosova was offered a position at and began work for Office Depot Inc. ("Office Depot" or "the company") as Lead Data Scientist on May 8, 2017. As part of her assigned duties at the company, Ms. Kolosova discovered that one of the company vendors, McKinsey & Company ("McKinsey" or "the vendor" hereinafter) - formerly known as AOE pre-acquisition by McKinsey - was defrauding Office Depot.

Specifically, McKinsey was hired to develop statistical predictive models that would be used in marketing campaigns to target Office Depot customers who have high propensity to buy Office Depot's products. The vendor was also hired to develop models for creating personalized offers for individual customers and to calculate customer life values for the purposes of engaging in effective marketing campaigns.

Instead McKinsey provided the company with predictive models that constituted utter statistical nonsense. These models were absurd from the business point of view as well. Specifically, the issues in the predictive models included:

1)   McKinsey decided to use the linear regression method to develop the predictive models. The regressors (explanatory variables) in the regression models were not statistically independent. They correlated one with another to a higher degree than they correlated with the dependent variable. This violated a fundamental assumption of the regression method which led to false and misleading results.

2)   To estimate regression coefficients, McKinsey used data that contained negative sales, missing values and questionable large sales values. Mandatory data cleansing was not performed.

3)   McKinsey copied the same simple computer program multiple times and changed the name of a dependent variable claiming they developed a new predictive model. The computer program code the vendor used can be easily copied from a basic statistical modeling and programming textbook.

4)   In their predictive model McKinsey used independent variables. The variables used included total sales for the first quarter of the year, total sales for the first half of the year and the total sales for the entire year. In so doing, McKinsey inflated total sales for the year by counting

2

sales for the first quarter three times, and sales for the second quarter twice. The variables were thus dependent and correlated. This too violated a fundamental assumption of the regression method which led to false and misleading results and was nonsensical also from a business perspective.

5)      Ms. Kolosova performed a test of the quality of prediction of the vendor models. Ms. Kolosova built a miss-classification table that is the gold standard for testing the quality of predictive models. She used the same data that was used by the vendor to estimate coefficients of the predictive model. Results show that out of 13,772 customers who made a purchase in the company stores the vendor model predicted only 2 customers.

On May 22, 2017, at a face-to-face meeting with McKinsey representative Steven Clark, Ms. Kolosova expressed her concerns and raised the above questions. Mr. Clark responded by laughing at Ms. Kolosova. He did not make any attempt to explain any of her questions or dispute any of her preliminary findings.

Shocked by the way Mr. Clark had responded, Ms. Kolosova began to look into the specifics of the McKinsey and Office Depot relationship. In so doing, Ms. Kolosova determined that McKinsey had billed Office Depot two million dollars ($2,000,000) annually plus travel and more than fourteen million dollars ($14,000,000.00) from January 2011 through October 2017 for work they did not actually perform.

After checking and double checking her findings regarding the vendor work, Ms. Kolosova reported her findings to Director Mr. Ranjith Chelasani, Ms. Kolosova's direct supervisor, and to Sr. Director Mr. Slava Sambu. Ms. Kolosova requested Mr. Chelasani and Mr. Sambu report the fraud to the company General Counsel and to stop immediately using any predictive models developed by the vendor.

Remarkably, Mr. Chelasani and Mr. Sambu attempted to cover up the fraud claiming the evidence Ms. Kolosova had brought them was not convincing and that they could not inform management or the team members that the work the vendor had tendered to the company was wrong.

Feeling that her concerns were being ignored, Ms. Kolosova decided to escalate the issue. On June 14, 2017 at 12:14 AM, Ms. Kolosova reported the fraud directly to Office Depot's CEO, Mr. Gerry Smith in an e-mail. (See Email to Mr. Smith Attached hereto as Exhibit A). That morning at 10:47 AM, Mr. Smith responded asking his assistant to set up a meeting with Ms. Kolosova. (See Response Email Attached hereto as Exhibit A).

On June 19, 2017 Ms. Kolosova met with CEO Mr. Smith in his office and presented him with her preliminary findings of the vendor fraud. Mr. Smith reviewed the findings during the meeting and concluded aloud that the vendor was engaging in fraud. CEO Mr. Smith then asked Ms. Kolosova if she had presented her findings to her managers and how they responded.

Ms. Kolosova explained to Mr. Smith that her warnings were completely ignored and that the company was continuing to use the corrupt and fraudulent predictive models in multi-million dollars marketing campaigns resulting in immense financial damages to the company. Ms. Kolosova

3

then confirmed that her direct supervisor's refusal was documented in e-mails to Mr. Smith. Mr. Smith then called Chief Administrative Officer (CAO) Mr. Michael Allison to join the meeting.

While waiting for Mr. Allison to join the meeting, Mr. Smith reviewed the correspondence between Ms. Kolosova and her managers in regards to the vendor fraud. In the midst of reading the e-mails Mr. Smith exclaimed, "this blows my mind." And then clearly stated he would demand that the vendor reimburse the company.

When Mr. Allison arrived, Mr. Smith briefed him on Ms. Kolosova findings and on the response by her managers. The CEO clearly stated that the marketing team's response was cover up. CEO showed Mr. Allison the absurdity of the vendor predictive models including but not limited to the wrongful use of the same variables multiple times. Mr. Smith then asked Mr. Allison to protect Ms. Kolosova from any retaliation. (As a matter of fact, the retaliation against Ms. Kolosova started almost immediately after this meeting). Mr. Allison agreed, and he stated that he believed that the cover up is worse than fraud itself. He asked Ms. Kolosova to bring him all the materials for his evaluation in order to make a decision about next steps.

The following day, on June 20, 2017, Ms. Kolosova tendered all the evidence she had gathered to Mr. Allison including email correspondences and the critical portions of the model development work performed by McKinsey demonstrating fraudulent programing/modeling. Immediately thereafter, Ms. Kolosova began to be subjected to unlawful retaliation.

During the same week that Ms. Kolosova reported her finding to the CEO and the CAO, Mr. Chelasani and Mr. Sambu requested from Ms. Kolosova to prepare a presentation for SVP of Marketing Ms. Diane Nick about current state of predictive modeling. Importantly, Mr. Sambu specifically ordered Ms. Kolosova to lie about the findings claiming that there were "some minor concerns" with predictive models, instead of calling out the fraud and abuse.

Ms. Kolosova refused to take part in any conspiracy to defraud Office Depot's investors. (See Monday June 27, 2017 4:26 pm e-mail attached hereto as Exhibit B). Remarkably, Mr. Sambu and Mr. Chelasani further retaliated against Ms. Kolosova by assigning her the impossible task of single-handedly developing a replacement model for the fraudulent predictive models – a task that typically requires several individuals working for months. Further they chastised Ms. Kolosova claiming that she was not doing job but refused to elaborate.

On June 30, 2017 Ms. Kolosova was asked to attend a meeting with Mr. Allison and Ms. Nick. At the meeting, Ms. Kolosova explained her findings of the vendor fraud to Mr. Allison and Ms. Nick. During the meeting Mr. Allison and Ms. Nick decided that Ms. Kolosova would perform a full investigation of the vendor. The investigation would date back to the onset of the relationship with McKinsey/AOE.

Ms. Kolosova immediately began the investigation. She successfully gathered all available agreements, Statements of Work (SOWs), and invoices paid to the vendor. She reviewed the computer programs developed by the vendor. She immediately confirmed from the documents that McKinsey was engaging in fraud and suspected that some of Office Depot's executives may have been involved in the fraud. Ms. Kolosova wondered how no other person had discovered the frivolous models McKinsey had put into place for more than six years which

4

did not produce any viable results.

On July 10, 2017 after completing the investigation she was tasked to undertake by Mr. Allison, Ms. Kolosova presented the results of her investigation to Ms. Nick. Ms. Kolosova's investigation yielded the following results:

1)     The vendor provided services to the company from 2011 through September 2017.

2)     In 2013 and 2014 the vendor did not submit an SOW and submitted invoices that lacked any details or itemization.

3)     Deliverables in two SOWs for 2015 and an SOW for 2016 were identical.

4)     Again, in 2017 McKinsey did not submit an SOW and submitted invoices that lacked any details or itemization.

5)     The predictive models that the vendor delivered were fraudulent and wrong.

6)     The vendor was paid almost $14,000,000 for work it did not perform.

7)     Office Depot continued to use the fraudulent models after Ms. Kolosova complained to CEO Mr. Smith about the fraud.

On July 11, 2017 one day after Ms. Kolosova shared her finding with Ms. Nick, Ms. Nick escalated the retaliation directed toward Ms. Kolosova. Ms. Nick stripped Ms. Kolosova of all of her responsibilities as a Lead Data Scientist, she excluded Ms. Kolosova from the modeling team. Ms. Nick also required Ms. Kolosova to report directly to her and directed her to move closer to Ms. Nick offices so that Ms. Nick could see what Ms. Kolosova was doing and who she was meeting with on a daily basis.

Remarkably, along with using the fraudulent McKinsey models, Ms. Nick was also allowing a McKinsey employee, Ms. Leann Thayaparan, to work on other mission-critical components of Office Depot marketing campaigns. Ms. Thayaparan was a recent college graduate without relevant analytical experience, work experience or significant educational experience. Yet despite her clear lack of qualification, Ms. Nick assigned Ms. Thayapara to develop analytical solutions for mission critical marketing initiatives for a multi-billion-dollar organization. Ms. Kolosova questioned the soundness of this judgment with her superiors.

On July 14, 2017 Ms. Kolosova met with Mr. Allison and shared the findings of her investigation. Ms. Kolosova detailed the retaliation she was subjected to by Ms. Nick. Ms. Kolosova explained that the vendor fraud was easy to identify and it was almost impossible for Office Depot's marketing team to not have discovered the fraud that was being perpetuated for more than six (6) years. Ms. Kolosova then concluded that she believed SVP Marketing Nick, was covering up the vendor fraud. Mr. Allison responded that he believed that Ms. Nick was "in it". He informed Ms. Kolosova that he was taking over the matter and that although it might take him some time to resolve the issue he wanted Ms. Kolosova "not to go anywhere".

On July 17, 2017 as per Mr. Allison's request, Ms. Kolosova informed Mr. Allison via e-mail that nothing was being done to stop the use of the vendor fraudulent and wrong predictive models. (See July 17, 2017 e-mail attached hereto as Exhibit D.)

Two days later, on July 19, 2017 during a one on one meeting with Ms. Nick, Ms. Kolosova was threatened with termination. Ms. Nick demanded that Ms. Kolosova stop reporting that nothing was being done to stop the use of the fraudulent models developed by the vendor. Ms. Nick told that Ms. Kolosova could not "live here and complain that nothing was done.... Otherwise it will be a problem".

In essence, Ms. Nick was ordering Ms. Kolosova to not report what was happening with respect to the vendor to CAO Mr. Allison; an order that directly contradicted the orders Mr. Allison had given Ms. Kolosova. At the same meeting, Ms. Nick demanded Ms. Kolosova develop a future-looking plan for predictive modeling and marketing analytics. Ms. Kolosova worked diligently and came up with a solid plan for creating predictive models and marketing analysis. Ms. Kolosova tendered the plan to Ms. Nick later that same evening.

Two days later, on July 21, 2017 Ms. Kolosova met with Ms. Nick to discuss her proposal. Although Ms. Nick said that the proposals were "right on point", she stated that there were no funds to implement this plan. Ms. Kolosova stated that she could implement the plan by herself, but cautioned it would take more time if she did it on her own.

Ms. Nick stonewalled ordering Ms. Kolosova not to perform the suggested corrective tasks. Instead, Ms. Nick stated that Ms. Kolosova should only engage in hiring people who "will help [Ms. Kolosova] think." Ms. Nick not only prevented Ms. Kolosova from resolving the issues, she further demoted Ms. Kolosova in a cruel and humiliating manner (See E-mail chain attached hereto as Exhibit E).

On July 25, 2017 Ms. Kolosova updated Mr. Allison about status of the vendor fraud as was requested of her. Moreover, she complained to Mr. Allison about the retaliation she was subjected to by Ms. Nick. (See E-mail chain attached hereto as Exhibit F).

On July 27, 2017 Mr. Allison informed Ms. Kolosova that the company was opening a formal internal investigation. He insinuated that Ms. Kolosova's managers were being investigated by ordering Ms. Kolosova not to disclose the existence of the investigation to Ms. Nick, Mr. Sambu or Mr. Chelasani. (See E-mail chain attached hereto as Exhibit G).

From early August 2017 through early September 2017 Ms. Kolosova met with VP Chief Audit Executive Ms. Jennifer Goschke, the individual assigned by Mr. Allison to conduct the formal investigation on three separate occasions. (See E-mail chain attached hereto as Exhibit H). Ms. Kolosova cooperated fully with all aspects of the investigation as requested.

On or about August 11, 2017, shortly after the first meeting with Ms. Goschke, Mr. Atif Ahmad, the individual assigned to manage the vendor from 2013 through January 2017, visited Ms. Kolosova's LinkedIn profile through LinkedIn search. Oddly, Ms. Kolosova had never spoken to Mr. Ahmad given his departure from the company prior to Ms. Kolosova's arrival. Additionally, Ms. Kolosova's profile was not updated and did not indicate that she was

6

employed at Office Depot.

On or about August 19, 2017, the company substantially increased the retaliation they subjected Ms. Kolosova to by placing her and her family in harm's way. Ms. Kolosova received a threatening phone call from an anonymous male on her home phone number that is known to a very small circle of family members. The man on the phone asked for Tanya. Ms. Kolosova stated it was she who had answered. He responded, "You should think about your 6 children". Ms. Kolosova, frightened by the threat, immediately hang up. Clearly, someone from Office Depot had contacted Mr. Ahmad and informed him about the investigation regarding McKinsey defrauding Office Depot.

Ms. Kolosova informed Ms. Goschke about the incidents the next day. Ms. Goschke promised she would look into who had leaked Ms. Kolosova's findings to Mr. Ahmad and stated she informed Chief Compliance Officer Ms. Katrina Lindsey about the threat Ms. Kolosova received over the phone.

On September 5, 2017 Ms. Goschke claimed that the investigation had run its course and there was no way to prove that any Office Depot executives had received any kickbacks or were involved in any way. She further retaliated against Ms. Kolosova by suggesting Ms. Kolosova contact HR to discuss "other opportunities" at the company. Moreover, in an effort to mussel Ms. Kolosova she demanded that Ms. Kolosova stop using the "inflammatory term fraud".

Thereafter, on September 5, 2017 Ms. Kolosova sent an email to Mr. Allison and Mr. Smith informing them about the situation with the internal investigation and suggested that they perform an external investigation (See E-mail chain attached hereto as Exhibit I). Ms. Kolosova was following the directions she had been given by Mr. Allison to keep him informed and to not go away.

While assessing financial damages caused by McKinsey to Office Depot's marketing campaigns, Ms. Kolosova discovered the existence of a fraud-prone accounting environment in the Office Depot database. On September 11, 2017 Ms. Kolosova reported to Chief Accounting Officer Mr. Michael Rabinovitch about her findings that she discovered in the company database. Ms. Kolosova stated that existing error-prone computing environment can be used to manipulate earnings. Ms. Kolosova was concerned that earnings manipulation was a clear violation of Sarbanes Oxley law. Ms. Kolosova never received a response from Mr. Rabinovitch.

On September 14, 2017 Ms. Kolosova was informed that Ms. Nick left the company. Ms. Jerri DeVard then was hired as Chief Marketing Officer and Ms. Kolosova was assigned to report to VP Marketing Ms. Lukana Justin.

On September 19, 2017 during a one on one meeting with Ms. Justin, Ms. Justin declared that she was "excited over the moon" that Ms. Nick was forced to leave the company. She stated that Ms. Kolosova was the most educated, skilled and experienced professional in analytics and modeling teams in Office Depot and that the company had deeply suffered from working with Ms. Nick.

7

At that meeting Ms. Justin asked Ms. Kolosova to prepare road map and a plan of what should be done to move forward and to fix existing situation in marketing department. She said that everything what is done is done wrong. She described the marketing department as a "disaster" multiple times. During this meeting Ms. Kolosova explained the situation with the vendor and asked Ms. Justin to make sure that Office Depot's marketing department no longer use the vendor predictive models. Ms. Kolosova informed Ms. Justin about the complaints she had made to top executives.

Following the meeting Ms. Justin sent an e-mail to Mr. Chelasani asking him to provide a list of all current uses of the vendor models. Mr. Chelasani lied when he responded with an email stating that the vendor models were not in use any more. Ms. Kolosova, also on the e-mail chain, corrected the misstatement of fact citing multiple examples where the vendor models were still being used by Office Depot. Mr. Chelasani responded that he did not have time to correct the situation because he had other priorities. Ms. Kolosova is informed and believes that Mr. Chelasani was not disciplined for lying to Ms. Justin.

On or about September 27, 2017 at a meeting with Ms. Justin and Sr. IT Director Mr. Prakash Sankaran, Mr. Kolosova presented a detailed plan for Actionable Analytics Framework. Mr. Sankaran exclaimed that he never heard about such an outstanding actionable analytical development. He stated that no other analytical vendors he interviewed proposed anything that came close to being as comprehensive as Ms. Kolosova's plan. Furthermore, he recommended that there was no way to move forward without first to deploy Ms. Kolosova's proposal.

Around the same time, Ms. Kolosova was invited to a meeting to discuss the estimation of Customer Life Value (CLV). The CLV estimations were used for the purpose of creating hyper-targeted marketing campaigns. During the meeting, the team complained about the poor campaign performance and the team voiced their suspicion that the CLV did not advance correct estimates.

Ms. Kolosova informed the team that the estimations the team used were based on the fraudulent McKinsey models. The team asked Ms. Kolosova for a quick fix solution to the problem. The following day Ms. Kolosova came up with a proposal designed to correct the CLV estimation. Ms. Kolosova's proposal required a few weeks to implement.

The team then asked Ms. Kolosova to provide them with a solution to fix the vendor model. Ms. Kolosova responded to the team's request explaining that the McKinsey model could not be fixed and she cited the necessary facts to support her. The team abruptly stopped any further communication with Ms. Kolosova.

On October 04, 2017 Ms. Kolosova met with Chief Compliance Officer Ms. Katrina Lindsey. During the meeting, Ms. Lindsey said that Chief Accounting Officer Mr. Rabinovitch had forwarded Ms. Kolosova's September 11, 2017 email. Ms. Lindsey then tried to convince Ms. Kolosova that other retail organizations were doing the same type of accounting.

Ms. Kolosova explained that what was being done was wrong and that there was an easy way to fix the problem in the database. Ms. Kolosova tried to explain how the simple fix would ensure the integrity of the earnings calculation. Ms. Lindsey responded by claiming she would consult with her friend at Michaels Inc. Ms. Kolosova was puzzled as to why she would not ask

someone within the company.  Ms. Lindsey promised she would meet with Ms. Kolosova in two weeks.

As a follow up to the meeting with Ms. Lyndsey, on October 04, 2017 Ms. Kolosova sent her an email with detailed explanation of how the earnings manipulations could be performed in the existing computing accounting environment. Ms. Kolosova also forwarded this email to Ms. Justin. Ms. Justin asked some follow up questions in a responding email.

The next day Ms. Justin asked Ms. Kolosova into her office to explain more. At this meeting Ms. Kolosova explained to Ms. Justin more about the error-prone computing environment that allows the company to manipulate earnings.  Specifically, the program allowed Office Depot to misrepresent the cost of revenue in the company's SEC filings. Ms. Justin told Ms. Kolosova that Mr. Rabinovich was her good friend and she would talk to him and arrange a meeting between Ms. Kolosova and Mr. Rabinovitch. Such a meeting never happened.

On October 11, 2017, Ms. Kolosova met with Mr. Allison to update him on her progress. During the meeting he indicated he too had made substantial progress with his investigation into wide-spread fraud within Office Depot. Moreover, he indicated he was continuing to gather information and he asked Ms. Kolosova to do the same.

On October 12, 2017 Ms. Kolosova was invited to a meeting with Mr. Allison and VP IT Mr. Andy Parry. Mr. Allison explained that he needed Mr. Parry to review the vendor works delivered to the company so that he could make a case for a refund and for damages caused by the use of the fraudulent models.

The next day, on October 13, 2017, Mr. Allison was fired by CEO Mr. Smith. Mr. Allison told Ms. Kolosova a few days after his termination that on October 12, 2017 he had sent an email CEO Mr. Smith providing him with an update about the vendor fraud and ways to remediate the fraud.  Mr. Allison told Ms. Kolosova that he never heard anything from CEO Mr. Smith regarding that email. Mr. Allison wrote to Ms. Kolosova that he did not "have much faith in what [was] going on [at Office Depot]"

On October 17, 2017, Office depot retaliated against Ms. Kolosova by terminating her employment. At approximately 4:00 pm Ms. Justin's Administrative Assistant informed Ms. Kolosova that her meeting with Ms. Justin was moved to another location.  Ms. Kolosova went to that room where she found an HR representative and Ms. Justin. Ms. Justin informed Ms. Kolosova that her position was eliminated and left the room.

The HR representative provided Ms. Kolosova with various documents. Ms. Kolosova again complained to the HR representative that the company was violating Sarbanes-Oxley, a Federal law that protects Ms. Kolosova from the retaliation and termination. HR representative said that she did not know anything about it.

Ms. Kolosova was not allowed to pick up her personal belongings from her work place and another HR representative brought Ms. Kolosova her backpack. Ms. Kolosova was escorted by an HR representative to the exit.

**Legal Standard**

To establish a prima facie case of a SOX violation, "[a] claimant must show: (1) she engaged in protected activity or conduct; (2) the employer knew of her protected activity; (3) she suffered an unfavorable personnel action; and (4) her protected activity was a contributing factor in the unfavorable personnel action." Lockheed Martin Corp. v. Administrative Review Bd., 717 F. 3d 1121, 1129 (10th Cir. 2013) (citations omitted).

Ms. Kolosova has satisfied all four elements and can easily make a prima facie claim of SOX retaliation. First, there is no disputing that Ms. Kolosova objected to a fraudulent scheme to continue using a nonsensical predictive model and she objected to the manner in which earning were potentially being manipulated. Second, there is no disputing that all of Ms. Kolosova's direct supervisors as well as senior management at Office Depot were well aware of her objections. Third, there is no disputing that Ms. Kolosova was subject to adverse employment actions when her duties were taken away, when she was prevented from looking into other vendor misconduct, when she was threatened with discipline up to and including termination for doing her job and protecting the interests of the shareholders, and when she was ultimately terminated without cause. Lastly there is no disputing that Ms. Kolosova has alleged that the adverse employment actions she suffered were motivated by her protected activity.

**Anticipated Defenses**

As in most employment cases, a pre-textual defense will most likely be asserted claiming that Ms. Kolosova had performance issues.  This false assertion will be easily rebutted by the facts.  Ms. Kolosova was never written up.  Ms. Kolosova was threatened with both termination and violence.  Ms. Kolosova was terminated after she made several complaints of shareholder fraud and earnings manipulation.  The proximity in time between Ms. Kolosova's complaints and her termination is a critical fact which will overcome any pretextual reason claimed for her unlawful termination.

**Conclusion**

In conclusion, Ms. Kolosova respectfully asks OSHA to accept this charge of unlawful retaliation under SOX.

As a final point, it is important to note that, in light of SOX jurisprudence, the complaints made by Ms. Kolosova need only be found to be a contributing factor to the decision to fire her. 29 C.F.R. §1980.104(e)(2); Bechtel v. Administrative Review Board, 710 F.3d 443, 447 (2d Cir. 2013). Even if her superiors had valid complaints about her work performance, it would not be sufficient to defeat her claim under SOX because her termination was clearly motivated by her protected activity.

Ms. Kolosova wishes to be made whole. As a result of her unlawful termination, Ms. Kolosova has suffered, and will continue to suffer, economic loss, including salary, bonuses and all the benefits she would have received as an employee of Office Depot. She has also

suffered significant emotional distress, humiliation, and damage to her reputation. Her termination is expected to have a materially adverse impact on her future career prospects. Ms. Kolosova has incurred significant legal fees for which she must receive compensation.

Respectfully submitted,

*Andrew OBeidy*

Andrew OBeidy, Esq. Attorney for Tanya Kolosova